FILED
**United States Court of Appeals**
**Tenth Circuit**

**July 30, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
———————————————

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JASON ROBERT HOPSON,

      Defendant - Appellant.

No. 23-5056

———————————————

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:22-CR-00081-GKF-3)**
———————————————

Neil D. Van Dalsem, Assistant Federal Public Defender (Scott A. Graham, Federal Public Defender, and Fred Randolph Lynn, Assistant Federal Public Defender, with him on the briefs), Muskogee, Oklahoma, for Defendant-Appellant.

Stephen Scaife, Assistant United States Attorney (Clinton J. Johnson, United States Attorney, with him on the briefs), Tulsa, Oklahoma, for Plaintiff-Appellee.
———————————————

Before **MATHESON**, **EID**, and **ROSSMAN**, Circuit Judges.
———————————————

**ROSSMAN**, Circuit Judge.
———————————————

This appeal stems from a prosecution under the Major Crimes Act of 1885, 18 U.S.C. §§ 1153, 3242 ("the Act" or "MCA"). The Act provides that certain listed offenses committed by American Indians in Indian country are federal crimes. Appellant Jason Robert Hopson, an Indian, was prosecuted under the Act for a felony offense involving an Indian victim that occurred within the boundaries of the Muscogee (Creek) Nation reservation, a federally recognized Indian tribal reservation. The indictment charged Mr. Hopson with felony assault resulting in serious bodily injury under 18 U.S.C. §§ 1153(a) and 113(a)(6). Mr. Hopson proceeded to trial. After the close of evidence, and at the request of Mr. Hopson's co-defendant, the district court instructed the jury on the lesser-included offense of misdemeanor simple assault under 18 U.S.C. § 113(a)(5)—a crime not listed in the Act. The jury acquitted Mr. Hopson of felony assault but found him guilty of misdemeanor simple assault. The district court entered judgment of conviction, and Mr. Hopson now appeals.

Mr. Hopson contends the district court lacked subject matter jurisdiction over misdemeanor simple assault because that offense is not one of the enumerated crimes in the Act. We agree. The district court's subject matter jurisdiction in this federal criminal prosecution comes from 18 U.S.C. § 3231, which provides for "original jurisdiction . . . of all offenses against the laws of the United States." The charged offense—"a felony assault under § 113"—is

listed in § 1153 and is therefore an "offense[] against the laws of the United States" under § 3231. 18 U.S.C. §§ 1153, 3231. The offense of conviction—misdemeanor simple assault under § 113(a)(5)—is a lesser-included offense of felony assault, but it is not listed in the Act. Accordingly, when misdemeanor simple assault is committed by an Indian defendant against an Indian victim on Indian land, it is not an "offense[] against the laws of the United States." In prosecutions under the Act, an Indian defendant, like any defendant prosecuted in federal court, is entitled to a jury instruction on a lesser-included offense if supported by the evidence, but a district court lacks subject matter jurisdiction under § 3231 to convict an Indian defendant for an offense that is not a federal crime. Exercising appellate jurisdiction under 18 U.S.C. § 1291, we vacate Mr. Hopson's conviction.[1]

## I[2]

### A

In February 2022, Mr. Hopson participated in a rally in Tulsa, Oklahoma, supporting the release of an Indian activist from federal prison.

---

[1] Mr. Hopson also challenges his sentence, contesting the amount of restitution imposed. We need not address this issue given our disposition.

[2] The facts recited here derive from the appellate record, which includes trial testimony and videos of the offense conduct admitted at trial.

Mr. Hopson and others demonstrated in front of the federal courthouse. Officer Ronald J. Neal of the City of Tulsa Police Department noticed the gathering as he inspected the route for an upcoming road race.

Officer Neal arrived at the rally in an unmarked police car. One individual approached the vehicle and gestured through the window for Officer Neal to leave, yelling he should "go." Supp.RII.Ex.2 at 00:13. Officer Neal did not move his car. He got out and said, "sir, you need to move." Supp.RII.Ex.2 at 00:43–:44. The rally-goers yelled at Officer Neal. One individual banged a drum close to Officer Neal's face and others closed in around him while his back was pressed against his driver's-side door.

Mr. Hopson then approached Officer Neal. The two men stood face-to-face. Officer Neal shoved Mr. Hopson. A few moments later, several people surrounded Officer Neal and began pushing and punching him. Officer Neal tried to move away, but the group, including Mr. Hopson, continued to run after him. Officer Neal eventually fell backwards, and Mr. Hopson fell forwards—landing directly next to Officer Neal.

Officer Neal stood up and took a few steps before falling down again. Other law enforcement officers on the scene helped Officer Neal, as he yelled, "my knee, my knee!" Supp.RII.Ex.2 at 02:06–02:10. After seeking medical treatment, Officer Neal learned he tore his anterior cruciate ligament (ACL)

4

and meniscus as well as a ligament in his elbow. He had surgery to repair his ACL.

These events took place within the boundaries of the Muscogee (Creek) Nation reservation. Mr. Hopson and Officer Neal are both Indians.

## B

Mr. Hopson was arrested on April 15, 2022. On March 21, 2022, a federal grand jury indicted Mr. Hopson and codefendants Jacob Richard Nokusece Wind and Sandy Williams—who also participated in the rally on February 7— under the Major Crimes Act with "assault[] . . . resulting in serious bodily injury . . . in violation of Title 18, United States Code, Sections 1151, 1153, and 113(a)(6)." RI.24. The indictment alleged all defendants are Indians and the crime occurred "within Indian Country in the Northern District of Oklahoma." RI.24.[3] Co-defendant Wind pled guilty to misdemeanor simple assault under

---

[3] To bring a prosecution under the Act, "the government is required to prove that" the defendant "is an Indian[] and . . . committed the crime within Indian Country." *United States* v. *Visinaiz*, 428 F.3d 1300, 1306 (10th Cir. 2005); *see id.* (involving a prosecution for second degree murder under 18 U.S.C. §§ 1153(a) and 1111(a)); *see United States* v. *Zunie*, 444 F.3d 1230, 1233 (10th Cir. 2006) (involving a prosecution for assault resulting in serious bodily injury under 18 U.S.C. §§ 1153(a) and 113(a)(6) and stating "the government had to prove . . . that the assault occurred in Indian country; and . . . that [the defendant] is an Indian"). "Whether the Major Crimes Act applies does not depend on whether the victim is an Indian." *Murphy* v. *Royal*, 875 F.3d 896, 915 n.22 (10th Cir. 2017) (citing 18 U.S.C. § 1153(a), which reaches crimes against an Indian "or other person"). *But see* 18 U.S.C. § 1152 (applying only to Indian country crimes committed by an Indian against a non-Indian, or vice-

5

18 U.S.C. § 113(a)(5). Co-defendant Williams stood trial with Mr. Hopson on the felony assault charge.

The joint trial lasted two days. Several of the government's witnesses, including Officer Neal, testified about the rally and the events leading up to the offense conduct. The government introduced three videos of the altercation with Officer Neal. A physician's assistant also testified for the government about Officer Neal's ACL tear.

At the close of the government's evidence, Mr. Hopson and co-defendant Williams moved for judgment of acquittal under Federal Rule of Criminal Procedure 29(a). The district court denied the motions, concluding, as relevant here, "a reasonable jury could find that Mr. Hopson was a cause of [Officer Neal's] serious bodily injury." RII.235.

---

versa); *United States* v. *Prentiss*, 273 F.3d 1277, 1278 (10th Cir. 2001) ("18 U.S.C. § 1152 establishes federal jurisdiction over 'interracial' crimes, those in which the defendant is an Indian and the victim is a non-Indian, or vice-versa."). Federal law defines "Indian country" to include, among other things, "all land within the limits of any Indian reservation under the jurisdiction of the United States Government." 18 U.S.C. § 1151.

Here, "Mr. Hopson does not dispute that he is an Indian, that Officer Neal was an Indian, or that the events of February 7, 2022, happened inside the Muscogee Nation," a federally recognized Indian reservation. Op. Br. at 23.

Co-defendant Williams and Mr. Hopson then presented their cases. Co-defendant Williams testified and called two other witnesses. Mr. Hopson called four witnesses but did not testify.

After the presentation of evidence, the court held a jury instructions conference. Co-defendant Williams—but not Mr. Hopson—had submitted proposed jury instructions. Mr. Williams asked the court to instruct the jury on the "lesser included offense" of misdemeanor simple "assault and battery" under 18 U.S.C. § 113(a)(5). RI.143 (heading capitalization omitted). The district court granted the request, giving the proposed instruction as to both defendants. That jury instruction provided, in full:

> If you unanimously find a defendant not guilty of Assault Resulting in Serious Bodily Injury in Indian Country, or if, after all reasonable efforts, you are unable to agree on a verdict as to that offense, then you must determine whether that defendant is guilty or not guilty of Simple Assault in Indian Country (18 U.S.C. § 113(a)(5)).

> The difference between these two offenses is that Simple Assault in Indian Country does not require proof that the assault resulted in serious bodily injury.

> For you to find a defendant guilty of Simple Assault in Indian Country, the government must prove each of the following elements beyond a reasonable doubt:

> *First:* the defendant knowingly assaulted R.N.;

> *Second:* the defendant is an Indian;

> *Third:* the assault happened within Indian Country in the Northern District of Oklahoma; and
>
> *Fourth:* the defendant was not acting in self-defense.
>
> The term "assault" means an attempted battery or placing another in reasonable apprehension of immediate bodily harm. "Battery" means the use of force against another, resulting in harmful or offensive contact.

RI.185; *see also* RII.366 (instructing the jury the verdict form will include "the second possibility for you to reach the lesser included offense of simple assault"). Though Mr. Hopson had not asked for the lesser-offense instruction, he did not object to the court's decision to give it. Mr. Hopson also did not object to the verdict form, which read, in relevant part:

> Answer the following only if you unanimously find the defendant, Jason Robert Hopson, not guilty of assault resulting in serious bodily injury in Indian Country, as charged in the indictment, or if, after all reasonable efforts, you are unable to unanimously agree on a verdict as to that offense:
>
> We the jury, being duly sworn and upon our oaths, find the defendant, Jason Robert Hopson, as to the lesser-included offense of Simple Assault in Indian Country, in violation of 18 U.S.C. § 113(a)(5): [blank fields indicating "not guilty" or "guilty"].

RI.195 (capitalization omitted).

The jury found Mr. Hopson and Mr. Williams not guilty of the charged offense—felony assault resulting in serious bodily injury under 18 U.S.C. §§ 1153 and 113(a)(6)—but found both guilty of the lesser-included offense—

misdemeanor simple assault under § 113(a)(5).[4] Based on the jury's verdict, the district court entered judgment of conviction against Mr. Hopson for simple assault. He was then sentenced to a three-year term of probation and ordered to pay $5,936.55 in restitution. This timely appeal followed.

## II

Mr. Hopson asks this court to vacate his conviction because "the federal court lacked jurisdiction to impose it." Op. Br. at 18. It is often said "[j]urisdiction . . . is a word of many, too many, meanings." *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (quoting *United States* v. *Vanness*, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996)); *see also Arbaugh* v. *Y&H Corp.*, 546 U.S. 500, 510 (2006) ("This Court, no less than other courts, has sometimes been profligate in its use of the term."); *United States* v. *Tony*, 637 F.3d 1153, 1157 (10th Cir. 2011) ("[T]he term 'jurisdiction' is often misused."). "Clarity would be facilitated if courts and litigants used the label 'jurisdictional' . . . only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick* v. *Ryan*, 540 U.S. 443, 455 (2004). Here, we readily

---

[4] Mr. Williams did not appeal his conviction and sentence.

conclude—and the parties agree—Mr. Hopson's appeal challenges the district court's *subject matter jurisdiction*.[5]

Subject matter jurisdiction is a "court's statutory or constitutional *power* to adjudicate [a] case." *United States* v. *Cotton*, 535 U.S. 625, 630 (2002); *Case* v. *Hatch*, 731 F.3d 1015, 1027 (10th Cir. 2013) (stating "jurisdictional" rules "govern[] a court's adjudicatory capacity" (quoting *Henderson ex rel. Henderson* v. *Shinseki*, 562 U.S. 428, 435 (2011))). "[A] federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits." *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U.S. 574, 577 (1999). Rather, "[a] court lacking jurisdiction cannot render judgment." *Basso* v. *Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974); *see also Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause.").

---

[5] We directed the parties to file supplemental briefing after oral argument. In part, we asked the parties to brief, "Is the issue presented in this appeal properly understood as a question of subject matter jurisdiction?" Order at 1, *United States* v. *Hopson*, No. 23-5056 (10th Cir. July 3, 2024). Both Mr. Hopson and the government answered yes. *See* Supp. Op. Br. at 5 ("[T]his appeal is 'properly understood as a question of subject matter jurisdiction' precisely because Mr. Hopson asserts that he stands convicted of an offense that is not an 'offense against the United States,' as required to invoke the federal court jurisdiction under 18 U.S.C. § 3231." (quoting Order, *supra*, at 1)); Gov't Supp. Br. at 2 ("Given [the parties'] dispute on the district court's authority, the issue is one of subject matter jurisdiction.").

Mr. Hopson contends the district court lacked jurisdiction over misdemeanor simple assault because that offense is not enumerated in the Act. As he explains, the "district court ha[d] no authority to convict [him] of an offense that is not a crime against the United States." Supp. Op. Br. at 22. Mr. Hopson's appeal thus squarely challenges the district court's adjudicatory authority over the offense of conviction—a quintessential question of subject matter jurisdiction.

Mr. Hopson acknowledges he did not raise this challenge in the district court. There is no preservation problem, however, because "[c]hallenges to a district court's subject matter jurisdiction may be raised at any time," and "[s]ubject matter [jurisdiction] may not be conferred on a federal court by stipulation, estoppel, or waiver." *United States* v. *Burch*, 169 F.3d 666, 668 (10th Cir. 1999); *see Ex parte Crane*, 30 U.S. 190, 200 (1831) ("Though the question of jurisdiction may not be raised by counsel, it can never escape the attention of the court.").[6] Whether "the district court[] [had] subject matter jurisdiction is a question of law . . . we review de novo." *Plaza Speedway Inc.* v.

---

[6] The government agrees the issue is properly before us. *See* Ans. Br. at 13 ("Subject-matter jurisdiction cannot be forfeited or waived, so this Court must assess the district court's jurisdiction even if the issue was never raised before the district court." (citing *United States* v. *Cotton*, 535 U.S. 625, 630 (2002))).

*United States*, 311 F.3d 1262, 1270 (10th Cir. 2002) (quoting *Hart* v. *Dep't of Lab. ex rel. U.S.*, 116 F.3d 1338, 1339 (10th Cir. 1997)).

The precise legal question raised in this appeal is one of first impression in our circuit: when an Indian defendant is lawfully prosecuted for an offense listed in the Act, and the district court properly instructs the jury on a lesser-included-offense not listed in the Act, does the court have subject matter jurisdiction to enter judgment of conviction on that unenumerated lesser-included offense? After carefully considering the briefing, the appellate record, and the applicable law, we answer no.

Our opinion proceeds in three parts. *First*, we describe the background principles and statutes governing subject matter jurisdiction in federal prosecutions under the Act. *Second*, based on the plain text of the relevant statutes and how the Supreme Court has interpreted them, we explain why, in this prosecution under the Act, the district court lacked jurisdiction to enter judgment of conviction for the unenumerated offense of misdemeanor simple assault. *Third*, we consider and reject the government's contrary arguments.

### A

### 1

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute which is not to be expanded by

judicial decree." *Kokkonen* v. *Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citation omitted); *see* U.S. Const. art. III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."); *United States* v. *Hudson*, 11 U.S. (7 Cranch) 32, 33 (1812) ("For, the power which congress possess[es] to create Courts of inferior jurisdiction, necessarily implies the power to limit the jurisdiction of those Courts to particular objects."). "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles* v. *Russell*, 551 U.S. 205, 212 (2007); *see Sheldon* v. *Sill*, 49 U.S. (8 How.) 441, 449 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers."). "[D]istrict courts may not exercise jurisdiction absent a statutory basis." *Home Depot U. S. A., Inc.* v. *Jackson*, 587 U.S. 435, 437 (2019).

Given these foundational principles, we must "presume[] that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citation omitted). "Subject-matter limitations on federal jurisdiction serve institutional interests. They keep the federal courts within the bounds the Constitution and Congress have prescribed." *Ruhrgas AG*, 526 U.S. at 583; *Ins. Corp. of Ir.* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)

("Subject-matter jurisdiction, then, is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign.").

Section 3231 is the statutory grant of subject matter jurisdiction to district courts over federal offenses. It provides "[t]he district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States." 18 U.S.C. § 3231. The Supreme Court has emphasized the "sweeping language[ of] § 3231 opens federal district courts to the full range of federal prosecutions for violations of federal criminal law." *Turkiye Halk Bankasi A.S.* v. *United States*, 598 U.S. 264, 269 (2023); *Lamar* v. *United States*, 240 U.S. 60, 65 (1916) (district courts have jurisdiction over "all crimes cognizable under the authority of the United States").

For purposes of § 3231, what constitutes an "offense against the laws of the United States" is a determination made by Congress. *See* U.S. Const. art. 1, § 8, cl. 18 ("The Congress shall have Power . . . [t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."); *Tennessee* v. *Davis*, 100 U.S. 257, 276 (1879) ("Courts of the United States derive no jurisdiction in criminal cases from the common law, nor can such tribunals take cognizance

of any act of an individual as a public offence, or declare it punishable as such, until it has been defined as an offence by an act of Congress passed in pursuance of the Constitution."); *United States* v. *Kozminski*, 487 U.S. 931, 939 (1988) ("Federal crimes are defined by Congress."); *Liparota* v. *United States*, 471 U.S. 419, 424 (1985) ("[F]ederal crimes . . . are solely creatures of statute.").

For a district court to have subject matter jurisdiction over an offense under § 3231, therefore, Congress must have made that offense a federal crime. *Hudson*, 11 U.S. at 34 ("The legislative authority of the Union must first make an act a crime, affix a punishment to it, and declare the Court that shall have jurisdiction of the offence."); *see also Jones* v. *United States*, 137 U.S. 202, 211 (1890) ("[T]he whole criminal jurisdiction of the courts of the United States [is] derived from acts of congress." (citing *Hudson*, 11 U.S. at 32)).

### 2

We now address the jurisdictional and sovereignty principles specific to federal prosecutions against Indian defendants. Our discussion is limited to the federal enclave laws applicable to conduct committed by an Indian defendant in Indian country. *See Negonsott* v. *Samuels*, 507 U.S. 99, 102 (1993) (explaining the General Crimes Act and Major Crimes Act concern "enclave jurisdiction [in] Indian country").

Indian tribes are "self-governing sovereign political communities." *United States* v. *Wheeler*, 435 U.S. 313, 322–23 (1978), *superseded by statute on other grounds by* Department of Defense Appropriations Act of 1991, Pub. L. No. 101-511, 104 Stat. 1892 (1990), *as recognized in United States* v. *Lara*, 541 U.S. 193 (2004). The "power to punish tribal offenders is part of [the Tribe's] own retained sovereignty." *Id.* at 328. Tribal "internal self-government includes the right to prescribe laws applicable to tribe members and to enforce those laws by criminal sanctions." *Id.* at 322; *cf.* 25 U.S.C. § 1301(2) (defining "powers of self-government" as "the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians").

To that end, the Supreme Court "has long 'require[d] a *clear expression* of the intention of Congress' before the state or federal government may try Indians for conduct on their lands." *McGirt* v. *Oklahoma*, 591 U.S. 894, 929 (2020) (alteration in original) (emphasis added) (quoting *Ex parte Crow Dog*, 109 U.S. 556, 572 (1883)); *see United States* v. *Quiver*, 241 U.S. 602, 605–06 (1916) (recognizing "the policy reflected by the legislation of Congress and its administration for many years, that the relations of the Indians among themselves—the conduct of one toward another—is to be controlled by the customs and laws of the tribe, save when Congress expressly or clearly directs

16

otherwise"). "[U]ntil Congress acts, the tribes retain their existing sovereign powers." *Wheeler*, 435 U.S. at 323.

The General Crimes Act, 18 U.S.C. § 1152, accords with this historical understanding of tribal independence. It states:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.
>
> This section *shall not extend to offenses committed by one Indian against the person or property of another Indian*, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

18 U.S.C. § 1152 (emphasis added).

"[T]he General Crimes Act provides that the federal criminal laws that apply to federal enclaves also apply in Indian country." *Oklahoma* v. *Castro-Huerta*, 597 U.S. 629, 641 (2022). But, as relevant here, the statute specifically carves out cases involving offenses committed in Indian country involving both an Indian defendant and an Indian victim. *See* 18 U.S.C. § 1152. Those offenses are "subject to the jurisdiction of the concerned Indian tribe, *unless* they are among those enumerated in the Indian Major Crimes Act." *Negonsott*, 507 U.S. at 102 (emphasis added); *see also Wheeler*, 435 U.S. at 322–323 (1978) (recognizing a tribe's "sovereign power to punish tribal offenders" is "inherent"

17

and is not granted by Congress); *Talton* v. *Mayes,* 163 U.S. 376, 384 (1896) (explaining "the powers of local self-government enjoyed by the Cherokee Nation existed prior to the constitution" and "the existence of the right in congress to regulate the manner in which the local powers of the Cherokee Nation shall be exercised does not render such local powers federal powers arising from and created by the constitution of the United States").

The Major Crimes Act, codified in 18 U.S.C. §§ 1153 and 3242, is a clear expression of congressional intent to make certain offenses committed by Indians in Indian country offenses against the United States. Section 1153(a) provides:

> Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, a felony assault under section 113, an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

The Act has a limited scope. "Except for the offenses enumerated in the Major Crimes Act," the Supreme Court has held, "all crimes committed by enrolled Indians against other Indians within Indian country are subject to the jurisdiction of tribal courts." *United States* v. *Antelope*, 430 U.S. 641, 643 n.2 (1977) (citing 18 U.S.C. § 1152); *see Negonsott*, 507 U.S. at 102 (explaining the

18

Act applies to "enumerated felonies"); *Duro* v. *Reina*, 495 U.S. 676, 680 n.1 (1990) (explaining the Act governs jurisdiction over "enumerated major felonies"); *United States* v. *Cowboy*, 694 F.2d 1228, 1235 (10th Cir. 1982) (explaining the Act applies to "certain serious crimes"); *United States* v. *Burch*, 169 F.3d 666, 669 (10th Cir. 1999) (explaining the Act applies to "certain enumerated felonies"); *United States* v. *Wood*, 109 F.4th 1253, 1257 (10th Cir. 2024) (explaining the Act applies to "[c]ertain 'Major Crimes'—those specifically listed in § 1153"); *United States* v. *Cuch*, 79 F.3d 987, 992 n.10 (10th Cir. 1996) (explaining the Act includes "a congressionally defined list" of federal crimes). "The Act, in sum, is a purposeful but limited incursion into the exclusive authority of tribes over the enumerated crimes." Conf. of W. Att'y Gens., American Indian Law Deskbook § 4:9 (2024).

The Act also has a "procedural dimension" found in 18 U.S.C. § 3242. *Joe* v. *United States*, 510 F.2d 1038, 1042 (10th Cir. 1974); *see* 1 Cohen's Handbook of Federal Indian Law § 9.02(2)(a) (2024) (discussing "the statutory language" of the Major Crimes Act and stating "18 U.S.C. § 3242 establishes the relevant procedures" for the Act (italics and heading capitalization omitted)). Section 3242 provides:

> All Indians committing any offense listed in the first paragraph of and punishable under section 1153 (relating to offenses committed within Indian country) of this title shall be tried in the same courts

and in the same manner as are all other persons committing such offense within the exclusive jurisdiction of the United States.

18 U.S.C. § 3242. In *Keeble* v. *United States*, the Supreme Court held § 3242 constitutes an "explicit statutory direction" that Indian defendants prosecuted for any offense listed in § 1153(a) shall have the same "procedural rights" as non-Indian defendants. 412 U.S. 205, 212 (1973); *see also id.* (explaining Congress never "intended to deprive Indian defendants of procedural rights guaranteed to other defendants, or to make it easier to convict an Indian than any other defendant"). These procedural rights include "the benefits of a lesser offense instruction" for a crime charged under the Act—even if that lesser offense *itself* is not listed in the Act. *Id.* at 212; *see id.* at 208 (recognizing as "beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater"); *id.* (citing cases and Federal Rule of Criminal Procedure 31(c), which provides, in relevant part, "A defendant may be found guilty of . . . an offense necessarily included in the offense charged"). Between the General Crimes Act and the Major Crimes Act, what remains of exclusive tribal jurisdiction, therefore, are charges involving an Indian defendant, an Indian victim, and an offense committed in Indian country that is not enumerated under § 1153(a).

We thus arrive at our point of departure for the inquiry in this appeal. The parties do not dispute—and we agree:

*First,* the district court had subject matter jurisdiction over the charged offense because "a felony assault under section 113" is listed in the Act. 18 U.S.C. § 1153(a).

*Second*, felony assault necessarily includes the crime of misdemeanor simple assault—that is, the latter is a lesser-included-offense of the former.[7]

---

[7] As the government correctly explains, a lesser-included offense exists when "some of the elements of the crime charged themselves constitute a lesser crime." Gov't Supp. Br. at 6 (quoting *Sansone* v. *United States*, 380 U.S. 343, 349 (1965)); *see also United States* v. *Toledo*, 739 F.3d 562, 568 (10th Cir. 2014) (explaining "the lesser included offense must contain some but not all of the elements of the charged offense" (quoting *United States* v. *Brown*, 287 F.3d 965, 974 (10th Cir. 2002))). That is the situation here and nobody suggests otherwise.

A felony is a crime for which the "maximum term of imprisonment authorized" is "more than one year." 18 U.S.C. § 3559(a)(5). Assault under 18 U.S.C. § 113(a)(6) criminalizes "[a]ssault resulting in serious bodily injury," and that crime is punishable "by a fine under this title or imprisonment for not more than ten years, or both"—so it is a felony. Assault under § 113(a)(6) "has two elements: '(a) the defendant committed an assault, and (b) the victim suffered serious bodily injury.'" *United States* v. *Walker*, 85 F.4th 973, 989 (10th Cir. 2023) (quoting *United States* v. *Clark*, 981 F.3d 1154, 1165 (10th Cir. 2020) and citing § 113(a)(6)).

Assault under 18 U.S.C. § 113(a)(5) is a different (lesser) offense, requiring only the element of "assault" and is punishable "by a fine under this title or imprisonment for not more than six months, or both, or if the victim of the assault is an individual who has not attained the age of 16 years, by fine under this title or imprisonment for not more than 1 year, or both"—so it is not a felony but instead a misdemeanor. Misdemeanor simple assault is defined as

21

*Third,* the government could not have indicted Mr. Hopson under the Act for misdemeanor simple assault because it is not listed in the Act. *See Joe*, 510 F.2d at 1041 ("Long before *Keeble*, it was fairly well settled that, in enacting [§] 1153, Congress did not intend to grant federal jurisdiction to indict for non-enumerated offenses.").

*Fourth*, the jury was lawfully instructed—consistent with § 3242 and *Keeble*—on the lesser-included offense of misdemeanor simple assault.[8]

*Finally*, as the verdict form confirms, the jury found Mr. Hopson not guilty of felony assault and guilty of misdemeanor simple assault.

---

a "petty offense" in federal criminal law. *See* 18 U.S.C. § 3559(a)(7) (stating a Class B misdemeanor is a crime for which maximum term of imprisonment is six months or less); *id.* § 19 (stating petty offenses include Class B misdemeanors).

[8] In his appellate briefing, Mr. Hopson emphasizes he "did not request the lesser-included instruction" and insists § 3242 only requires the district court to instruct on lesser-included offenses "if requested by a defendant." Reply Br. at 3. True, only Mr. Hopson's co-defendant requested the lesser-included offense instruction, but we need not examine what legal significance that might have in resolving the issue before us. Mr. Hopson admits he did not object when the instruction was given and agrees on appeal that "case law supports giving that instruction." Op. Br. at 24. Given our disposition, and Mr. Hopson's concessions, we need not interrogate his argument further in this case.

22

What the parties debate is whether, under these circumstances, the district court had authority to convict and sentence Mr. Hopson for misdemeanor simple assault under § 113(a)(5). It did not, as we will explain.

**B**

"[I]n any case concerning the interpretation of a statute the 'starting point' must be the language of the statute itself." *Lewis* v. *United States*, 445 U.S. 55, 60 (1980) (quoting *Reiter* v. *Sonotone Corp.*, 442 U.S. 330, 337 (1979)). "Congress expresses its purpose by words. It is for us to ascertain—neither to add nor to subtract, neither to delete nor to distort." *62 Cases, More or Less, Each Containing Six Jars of Jam* v. *United States*, 340 U.S. 593, 596 (1951). Our primary task in reviewing Congress's chosen language is "to determine congressional intent, using traditional tools of statutory interpretation." *M.S.* v. *Premera Blue Cross*, 118 F.4th 1248, 1266 (10th Cir. 2024) (quoting *Potts* v. *Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 613 (10th Cir. 2018)). "When a statute is unambiguous, . . . we must apply its plain meaning" because "there can be no greater statement of legislative intent than an unambiguous statute itself." *United States* v. *Husted*, 545 F.3d 1240, 1245 (10th Cir. 2008).

Mindful of these principles, the matter here is straightforward. The relevant statutory grant of jurisdiction for this federal prosecution is 18 U.S.C. § 3231. "Jurisdiction of the lower federal courts is further limited to those

subjects encompassed within a statutory grant of jurisdiction." *Ins. Corp. of Ir.*, 456 U.S. at 701. Here, the subject encompassed by § 3231 is "offenses against the laws of the United States."

Section 1153(a) identifies "a felony assault under section 113" as a federal crime. The statute does not mention misdemeanor simple assault under § 113. "The presumption" in construing statutes "is . . . that every thing has been expressed which was intended." *Eyster* v. *Centennial Bd. of Fin.*, 94 U.S. 500, 503 (1876); *Conn. Nat'l Bank* v. *Germain*, 503 U.S. 249, 253–54 (1992) (instructing we must "presume that [Congress] says in a statute what it means and means in a statute what it says there"). Abiding the plain text, misdemeanor simple assault under § 113, when committed by an Indian defendant against an Indian victim on Indian land, is a crime within the exclusive jurisdiction of the tribal courts—it is not an offense against the United States.

Nothing in § 3242 suggests otherwise. Recall, § 3242 states, "[a]ll Indians committing *any offense listed in the first paragraph of and punishable under section 1153 (relating to offenses committed within Indian country)* . . . shall be tried in the same courts and in the same manner as are all other persons committing such offense within the exclusive jurisdiction of the United States." 18 U.S.C. § 3242 (emphasis added). The language of § 3242 plainly cabins its

application to "any offense *listed* in the first paragraph" of "section 1153" and to all persons "committing *such offense* [listed in the first paragraph of section 1153]." *Id.* (emphasis added). Again, simple assault *is not* listed in § 1153. And Section 3242 speaks only to how Indian defendants prosecuted in federal court are to be tried for crimes that *are* listed in § 1153(a).

We readily conclude the plain text of § 3231 and the Act resolves this appeal. *See M.S.*, 118 F.4th at 1266 ("If the language is plain and unambiguous, our inquiry must cease and the plain meaning of the statute controls." (quoting *Ceco Concrete Const., LLC* v. *Centennial State Carpenters Pension Tr.*, 821 F.3d 1250, 1258 (10th Cir. 2016)). Recall, "§ 3231 opens federal district courts to the full range of federal prosecutions for *violations of federal criminal law*." *Turkiye Halk Bankasi A.S.*, 598 U.S. at 269 (emphasis added). Nowhere does §§ 1153 or 3242 make misdemeanor simple assault—committed by an Indian against another Indian in Indian country—a violation of *federal* criminal law. Only a tribal court may punish Mr. Hopson for the crime of misdemeanor simple assault committed in Indian country against an Indian victim. The district court therefore lacked subject matter jurisdiction to enter judgment of conviction against Mr. Hopson for the offense of misdemeanor simple assault. *See Mansfield, C. & L.M. Ry. Co.* v. *Swan*, 111 U.S. 379, 382 (1884) ("[T]he rule, springing from the nature and limits of the judicial power

of the United States, is inflexible and without exception which requires this court, of its own motion, to deny its jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record.").

## C

The government resists this conclusion on several grounds. *First*, the government argues the text and legislative history of the Act show the district court had subject matter jurisdiction to convict Mr. Hopson of misdemeanor simple assault. *Second*, relying primarily on *Keeble*, the government argues the Supreme Court has held § 3242 is an implied grant of subject matter jurisdiction over lesser-included offenses not enumerated in § 1153. *Third*, the government urges us to follow out-of-circuit precedent, contending reversal would create an unwarranted circuit split. We consider these arguments in turn and explain why each is unavailing.

## 1

### a

The government insists the district court had subject matter jurisdiction over misdemeanor simple assault because "the MCA's enumerated offenses [in § 1153] necessarily include their lesser-included offenses." Gov't Supp. Br. at 9. The government invokes what it deems "universal principles" to support its

view that "simple assault—as a lesser-included offense—is a federal offense under the MCA." Gov't Supp. Br. at 9. We reject the government's argument, which runs counter to the text of the Act, well-settled canons of statutory interpretation, and fundamental principles of tribal sovereignty.

The government does not dispute what the plain text of the Act actually says: only "felony assault" is listed in § 1153. As the Supreme Court has acknowledged, the Act applies "*only* to certain *enumerated* crimes." *McGirt*, 591 U.S. at 898 (emphasis added); *see also, e.g.*, *Cowboy*, 694 F.2d at 1235 ("The [Major Crimes] Act was passed in 1885 specifically to vest the federal courts with jurisdiction over *certain* serious crimes." (emphasis added)). Notwithstanding Congress's particularity in drafting, the government invites us to infer Congress also meant to include unenumerated lesser-included offenses in the Act. That is not a permissible way to read statutes.

The negative implication canon—or the *expressio unius* canon—is a helpful tool here. It "provides that . . . 'the enumeration of certain things in a statute suggests that the legislature had no intent of including things not listed or embraced.'" *Navajo Nation* v. *Dalley*, 896 F.3d 1196, 1213 (10th Cir. 2018) (quoting *Seneca-Cayuga Tribe of Okla.* v. *Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1034 & n.24 (10th Cir. 2003)); *Esteras* v. *United States*, 145 S. Ct. 2031, 2041 (2025) (observing "the *expressio unius* canon has particular force"

where "the statute includes "an 'established series,' such that any 'omission' from that series necessarily 'bespeaks a negative implication'" (quoting *Chevron U.S.A. Inc.* v. *Echazabal*, 536 U.S. 73, 81 (2002))). Applying that canon, we must reach precisely the opposite conclusion of the one urged by the government. The absence of simple assault from the enumerated list in § 1153 strongly suggests that offense was intentionally *excluded*, not necessarily included.

The full text of the Act confirms Congress did not intend that crimes generally thought of as lesser-included offenses would come within the scope of the Act—and thus the criminal subject matter jurisdiction of the federal court—simply because the greater offenses are covered. For example, the Act specifically includes a lesser-included crime among the enumerated offenses: "murder [and] manslaughter" are both considered major crimes under § 1153(a). *See United States* v. *Joe*, 452 F.2d 653, 654 (10th Cir. 1971) ("[I]n enacting the Statute, Congress specifically included certain lesser included offenses and is deemed to have done so to the exclusion of all others else they would also have been named."). Congress chose to list manslaughter as a major crime in the Act, even though manslaughter is generally understood as a lesser-included offense of murder. *See United States* v. *Walker*, 130 F.4th 802, 807 (10th Cir. 2025) (stating, in the context of a prosecution under the Act,

"[i]nvoluntary manslaughter is a lesser-included offense of first-degree murder"). We see nothing in the statutory text that Congress made the same choice for felony assault and misdemeanor simple assault. *See Fish* v. *Kobach*, 840 F.3d 710, 740 (10th Cir. 2016) ("When Congress knows how to achieve a specific statutory effect, its failure to do so evinces an intent *not* to do so."). Under the government's universal principle, however, Congress would have had no need to specifically enumerate *any* lesser included offense in the Act.[9]

---

[9] Notably, the history of statutory amendments also supports our conclusion. When Congress has sought to expand the reach of the Act, it has done so specifically—and the trend has been in favor of serious crimes, not petty offenses. Over the course of six amendments to § 1153, Congress separately listed five different kinds of assault—never including misdemeanor simple assault as a major crime—before settling on "a felony assault under section 113." *See* Act of Mar. 3, 1885, ch. 341, § 9, 23 Stat. 385 (listing only "assault with intent to kill"); Act of Mar. 4, 1909, ch. 321, § 328, 35 Stat. 1151 (adding "assault with a dangerous weapon"); Act of May 29, 1976, Pub. L. No. 94-297, sec. 2, § 1153, 90 Stat. 585 (adding "assault with intent to commit rape"); Act of Oct. 12, 1984, Pub. L. No. 98-473, sec. 1009, § 1153, 98 Stat. 1837, 2141 (listing four types of felony assault: (1) with intent to commit rape; (2) with intent to commit murder; (3) with a dangerous weapon; and (4) resulting in serious bodily injury); Act of Sept. 13, 1994, Pub. L. No. 103-322, sec. 170201(e), § 1153(a), 108 Stat. 1796, 2043 (adding "assault against an individual who has not attained the age of 16 years"); Act of Mar. 7, 2013, Pub. L. No. 113-4, sec. 906(b), § 1153(a), 127 Stat. 54, 125 (listing only "a felony assault under section 113"). Thus, if we were to consider the history of statutory amendments, what we would see is congressional intent to list only the most serious types of assault in § 1153—in other words, the major crimes. *See Fish* v. *Kobach*, 840 F.3d 710, 740 (10th Cir. 2016).

Another well-settled approach to reading statutes—the "preference for avoiding surplusage constructions"—further defeats the government's argument. *Dalley*, 896 F.3d at 1215. As Mr. Hopson correctly contends, if lesser-included offenses are necessarily included in § 1153(a), then "the word 'felony' in 18 U.S.C. § 1153(a) – all four times – [would be] surplusage." Supp. Resp. Br. at 5. "[E]ach word Congress uses is there for a reason." *Advoc. Health Care Network* v. *Stapleton*, 581 U.S. 468, 477 (2017); *Esteras*, 145 S. Ct. at 2043 ("Congress's drafting decisions have significance."). And it is our practice to "give effect, if possible, to every clause and word of a statute." *Williams* v. *Taylor*, 529 U.S. 362, 404 (2000). We reject the notion that by specifying "a felony assault under section 113," Congress actually meant to include *any* assault under § 113. 18 U.S.C. § 1153(a).

Finally, accepting the government's argument would require us to abandon fundamental principles of tribal sovereignty and federal jurisdiction that are directly relevant to any prosecution under the Act. The Supreme Court has explained, "the enumeration in the [Major Crimes Act] of certain offenses as applicable to Indians in the reservations, carries with it some implication of a purpose to exclude others." *Quiver*, 241 U.S. at 606; *see also Ramah Navajo Sch. Bd.* v. *Bureau of Revenue*, 458 U.S. 832, 846 (1982) (observing "federal statutes and regulations relating to tribes and tribal activities must be

'construed generously in order to comport with . . . traditional notions of [Indian] sovereignty and with the federal policy of encouraging tribal independence'" (alteration in original) (quoting *White Mountain Apache Tribe* v. *Bracker*, 448 U.S. 136, 144 (1980))). The Act is a "carefully limited intrusion of federal power into the otherwise exclusive jurisdiction of the Indian tribes to punish Indians for crimes committed on Indian land." *Antelope*, 430 U.S. at 642 (quoting *Keeble*, 412 U.S. at 209). As Mr. Hopson appropriately observes, "in any other context in which [a] district court gives [a] lesser-included offense instruction[], the lesser offense is a federal crime in the first instance." Reply Br. at 4. But it is well established the Act cannot be expanded by implication to offenses not enumerated by Congress. *See Welch* v. *Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 474 (1987) ("[T]he courts properly are reluctant to infer that Congress has expanded our jurisdiction."); *Negonsott*, 507 U.S. at 103 ("Congress has plenary authority to alter these jurisdictional guideposts."). We will not read the statute in a way that enlarges federal jurisdiction over Indian-against-Indian offenses in Indian country by judicial decree.

## b

The government next moves away from § 1153 and focuses on § 3242. In the government's view, § 3242 confers subject matter jurisdiction over lesser-included offenses not listed in § 1153. As the government puts it, "federal

district courts have jurisdiction to convict an Indian defendant of all offenses that he commits 'under section 1153,' and of any other offense that 'all other [non-Indian] persons committing such [Section 1153] offense' could be tried." Ans. Br. at 14 (alterations in original) (quoting 18 U.S.C. § 3242). Again, we disagree.

First, the statutory basis for subject matter jurisdiction in federal criminal prosecutions, including in cases under the Act, is 18 U.S.C. § 3231. Section 3242 does not concern subject matter jurisdiction. Resisting this conclusion, the government says it is significant that when the Act—originally codified as one provision—was split between § 1153 and § 3242, "Congress codified § 3242 into Chapter 211" which is "titled 'Jurisdiction and Venue.'" Gov't Supp. Br. at 11 (quoting Act of June 25, 1948, Pub. L. 80-772, § 1153, 62 Stat. 683, 826–27). The government suggests this aspect of the legislative history "supports that § 3242 is a jurisdictional statute—in fact, it suggests that Congress intended to make § 3242 a jurisdictional statute over § 1153." Gov't Supp. Br. at 11–12. We are not persuaded.

For one thing, "we need not consider legislative history where, as here, we find the statutory language unambiguous." *Dalley*, 896 F.3d at 1211. And a statute's "[]chapter heading cannot substitute for the operative text of the statute." *Fla. Dep't of Revenue* v. *Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47

(2008); *see also Bhd. of R.R. Trainmen* v. *Balt. & O. R. Co.*, 331 U.S. 519, 528–29 (1947) ("[T]he title of a statute and the heading of a section cannot limit the plain meaning of the text."); *Morris* v. *Okla. Dep't of Hum. Servs.*, 685 F.3d 925, 936 (10th Cir. 2012) ("Section headings cannot substitute for the operative text of the statute." (internal quotation marks omitted)); *Holy Trinity Church* v. *United States*, 143 U.S. 457, 462 (1892) ("The title of an act cannot control its words . . . ."). Recall, the operative text of § 3242 states Indian defendants "committing any offense listed in . . . section 1153 . . . shall be tried in the same courts and in the same manner as are all other persons committing such offense." Section 3242 does not use jurisdictional language. *See Lopez-Munoz* v. *Barr*, 941 F.3d 1013, 1017 (10th Cir. 2019) (explaining "jurisdictional language must be clear," and "[s]uch clarity typically exists only when the statute addresses 'the courts' statutory or constitutional *power* to adjudicate the case'" (quoting *Barnes* v. *United States*, 776 F.3d 1134, 1146 (10th Cir. 2015) (emphasis in original))). "Jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'" *Hatch*, 731 F.3d at 1027 (quoting *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 274 (1994)); *see id.* (stating "jurisdictional" rules "govern[] a court's adjudicatory capacity" (quoting *Henderson*, 562 U.S. at 435)). But § 3242 speaks only to the procedural rights of defendants tried under the Act.

At the time of the Act's enactment in 1885, the word "trial" meant the "examination of a cause in controversy between parties, before a proper tribunal." *Trial*, American Dictionary of the English Language (1st ed. 1828); *see also Trial*, Black's Law Dictionary 1188 (1st ed. 1891) (defining trial as "[t]he examination before a competent tribunal, of the facts or law put in issue in a cause, for the purpose of determining such issue"); *M.S.*, 118 F.4th at 1266 ("The common and ordinary usage of a term may be obtained by reference to a dictionary." (internal quotation marks omitted)). The ordinary meaning of "manner" was "form; method; way of performing or executing"—this conveys procedure, not adjudicatory authority. *Manner*, American Dictionary of the English Language (1st ed. 1828). The words "tried" and "manner" are terms of *procedure,* establishing procedural protections to Indian defendants, and not words of power, expanding the adjudicatory authority of the court.

Even if we assumed for argument's sake that § 3242 is a "jurisdictional statute," we still would be bound to apply it strictly *according to its own terms*. *See Bd. of Cnty. Comm'rs of Boulder Cnty.* v. *Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1250 (10th Cir. 2022) (instructing that "statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction" (quoting *United States ex rel. King* v. *Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1280 (10th Cir. 2001))). The text makes clear

§ 3242 is limited to those offenses listed in § 1153, and § 1153 lists only felony assault. We agree with Mr. Hopson that "Section 3242 explicitly restricts itself to cases that fall within the Major Crimes Act offense list. It cannot be construed to *expand* that list." Supp. Op. Br. at 15.

### 2

Next, the government asks us to affirm under *Keeble*. On the government's reading, *Keeble* confirms "§ 3242 . . . authorizes jurisdiction over the lesser-included offense of an indicted 'major crime.'" Ans. Br. at 15; *see also* Ans. Br. at 16 (contending "*Keeble* and § 3242 establish district courts' jurisdiction over Indian defendants' lesser-included offenses"). The government also points to *Spaziano* v. *Florida*, 468 U.S. 447, 456 (1984), where it insists the Supreme Court held that "to give a lesser-included instruction, the district court must—as a matter of law—have authority to convict the defendant of the lesser included offense." Ans. Br. at 17. The government misreads these precedents. Properly understood, both are fully consistent with our holding today.

### a

### i

In *Keeble*, the government charged an Indian defendant with felony assault under the Act. 412 U.S. at 206. At trial, Mr. Keeble requested a jury

instruction on the lesser-included offense of misdemeanor simple assault. The court refused to give it, and ultimately, Mr. Keeble was convicted as charged in the indictment. *Id.* at 206–07. The Eighth Circuit affirmed.

At issue before the Supreme Court was "whether an Indian prosecuted under the [Major Crimes] Act is entitled to a jury instruction on a lesser included offense where that lesser offense is not one of the crimes enumerated in the Act."[10] *Id.* at 206. The government argued there was no such right because "[t]o grant an instruction on the lesser offense of simple assault would . . . infringe the tribe's residual jurisdiction in a manner inconsistent with the Act." *Id.* at 209. The Supreme Court disagreed with the government.

The Court held § 3242 guaranteed Indian defendants prosecuted under the Act the same procedural protections as non-Indian defendants prosecuted for the same crimes in federal court. *Id.* at 214. One such "procedural right[]" guaranteed by the Act, the Supreme Court held, was "an instruction on a lesser included offense" under Federal Rule of Criminal Procedure 31(c). *Id.* at 212,

---

[10] The question presented on certiorari was broader than the issue ultimately decided. *Compare Keeble* v. *United States*, 409 U.S. 1037 (1972) (granting certiorari to review "[w]hether the District Court's refusal to give a lesser included offense instruction under 18 U.S.C. § 1153 violated the Fifth Amendment's due process guarantee"), *with Keeble*, 412 U.S. at 213 (explaining the "difficult constitutional questions" of due process were "questions that [the Court] need not face").

214. The Court explained, "Congress extended federal jurisdiction to crimes committed by Indians on Indian land," which "is emphatically not to say, however, that Congress intended to deprive Indian defendants of procedural rights guaranteed to other defendants, or to make it easier to convict an Indian than any other defendant." *Id.* at 211. Rather, "[i]n the face of [§ 3242's] explicit statutory direction"—that Indian defendants "committing any offense listed in . . . section 1153 . . . shall be tried in the same courts and in the same manner"— "we can hardly conclude that Congress intended to disqualify Indians from the benefits of a lesser offense instruction, when those benefits are made available to any non-Indian charged with the same offense." *Id.* at 212. Without the benefit of a lesser-included-offense instruction, the Court reasoned, "the jury is likely to resolve its doubts in favor of conviction [for the only crime submitted to the jury]." *Id.* at 213.

Importantly, the *Keeble* Court specifically emphasized what it was and was not holding. "We *hold only,*" the Court said, "that where an Indian is prosecuted in federal court under the provisions of the Act, the Act does not require that he be deprived of the protection afforded by an instruction on a lesser included offense." *Id.* at 214 (emphasis added). The Court also emphasized the opinion "neither expands the reach of the Major Crimes Act

nor permits the Government to infringe the residual jurisdiction of a tribe by bringing prosecutions in federal court that are not authorized by statute." *Id.*

Justice Stewart dissented, joined by Justices Powell and Rehnquist. The dissent acknowledged, "Congress established jurisdiction in the federal district courts only over certain specifically enumerated offenses committed by Indians on Indian reservations." *Id.* at 216–17. But in the dissent's view, "a lesser included offense instruction would have been improper in the present case, where the federal court had no jurisdiction over the lesser offense of simple assault." *Id.* at 217; *id.* at 216 (reasoning "a lesser included offense instruction is possible only when the lesser offense is within federal jurisdiction").

## ii

The government claims "*Keeble* and § 3242 establish district courts' jurisdiction over Indian defendants' lesser-included offenses." Ans. Br. at 16. As the government sees it, *Keeble* held "an Indian defendant must receive a jury instruction for a lesser-included offense [under § 3232] even if that lesser-included offense isn't listed in the Major Crimes Act," so the "necessary result" of that holding "is that the district court has jurisdiction to convict the defendant of the lesser-included offense." Ans. Br. at 19. The government is wrong.

"[A] good rule of thumb for reading [Supreme Court] decisions is that what they say and what they mean are one and the same . . . ." *Mathis* v. *United States*, 579 U.S. 500, 514 (2016). As discussed, the *Keeble* majority said it was holding "only" that a defendant prosecuted under the Act has a right under § 3242 to a lesser-included-offense instruction—even though the lesser-included offense was not one of the crimes specifically listed in the Act. *Keeble*, 412 U.S. at 214. The majority reasoned that in such situations tribal self-government interests were unaffected—precisely because jurisdiction under the Act was not expanded by giving the lesser-included offense instruction. *Id.* at 214. Indeed, the dissenters in *Keeble* rejected the majority's disposition *because* "the trial court did not have jurisdiction over the 'lesser-included offense.'" *Id.* at 215 (Stewart, J., dissenting).

While the government acknowledges *Keeble* "emphasized the narrowness of its holding," the government misunderstands what that holding actually is. Ans. Br. at 15. According to the government, "*Keeble* simply made clear that § 3242 . . . authorizes jurisdiction over the lesser-included offense of an indicted 'major crime.'" Ans. Br. at 15.[11] The Court did no such thing. *Keeble*

---

[11] The government, without elaboration, asserts § 3242 is "a different statute than the Major Crimes Act." Ans. Br. at 15. But § 3242 is part of the Act. The first enactment of the Major Crimes Act included, in a single provision, the text now found in § 1153 and § 3242. *See* Act of Mar. 3, 1885, ch. 341, § 9, 23 Stat. 385. In 1948, Congress revised, codified, and enacted into

involved a defendant's statutory right to a lesser-included offense instruction under § 3242, not a district court's authority to convict. As one treatise explains,

> Although the listed offenses are the only ones technically covered by the Major Crimes Act, the Supreme Court held in *Keeble* . . . that an Indian charged with a felony against an Indian victim under the Major Crimes Act was entitled to a lesser-included offense instruction which would have been available to a non-Indian in similar circumstances *despite the absence of any independent federal jurisdiction over the lesser-included offense when committed by an Indian.*

1 Wharton's Criminal Procedure § 2:22 (14th ed. 2025) (emphasis added); *accord* Cohen, *supra*, at § 9.02[2][g] (explaining "*Keeble* dealt only with the right to an instruction and not whether jurisdiction existed to convict and sentence on the offense"). Nothing in *Keeble* supports the government's contrary understanding, and we cannot ignore the clear language in the majority opinion refuting it.[12]

---

positive law the entire criminal code, Title 18, which resulted in the Act's recodification in § 1153 and § 3242. *See* Act of June 25, 1948, Pub. L. 80-772, § 1153, 62 Stat. 758, 827; *see also Jurisdiction on Indian Reservations: Hearing Before the Select Committee on Indian Affairs*, 96th Cong. 4–5 (1980) (stating in the "historical and revision notes" to § 1153 that during the 1948 recodification, the "venue provisions of [the Act] [were] incorporated in section 3242" (heading capitalization omitted)). The Supreme Court has accordingly referred to the Act as including both § 1153 and § 3242. *See Keeble*, 412 U.S. at 205 n.1. We follow the Supreme Court's example.

[12] Interestingly, the government's argument in Mr. Hopson's case and the government's argument in the Supreme Court in *Keeble* proceed from the same flawed premise: that a district court cannot instruct on a lesser-included

The government's understanding of *Keeble* also runs counter to precedents in our court and the Supreme Court interpreting that decision. The Supreme Court appears to have acknowledged *Keeble* dealt only with the right to a jury instruction and did not resolve a jurisdictional question. *See United States* v. *John*, 437 U.S. 634, 636 n.3 (1978) (acknowledging *Keeble* "entitled" the appellant to a lesser-included-offense instruction on misdemeanor simple assault but did not reach the separate argument that "the District Court had no jurisdiction to enter a judgment of conviction for the lesser offense . . . not listed in § 1153"). And we have previously understood *Keeble*'s holding as concerning procedural rights, not subject matter jurisdiction. For instance, in *United States* v. *Cooper*, we recognized "[t]he basis for the holding in *Keeble* . . .

---

offense over which it lacks subject matter jurisdiction. In *Keeble*, the government insisted there could be no instruction, because there was no jurisdiction. As the United States argued in its merits brief, "an offense cannot be considered a 'lesser' offense 'included' in the crime charged if the court has no jurisdiction over that less serious offense, and th[u]s no power to try it or punish it." Brief for Respondent at 8, *Keeble* v. *United States*, 412 U.S. 205 (1973) No. 72-5323, 1973 WL 172344 at *9. And here, the government takes the converse posture. Because there must be an instruction, it contends, there must be jurisdiction. But the Supreme Court has rejected the premise that links these two positions. *See Keeble*, 412 U.S. at 209 ("To grant an instruction on the lesser offense of simple assault would, in the Government's view, infringe the tribe's residual jurisdiction in a manner inconsistent with the Act. . . . Since that conclusion is compelled neither by the language, nor the purposes, nor the history of the Act, we cannot agree."). In other words, *Keeble* held a lesser-included-offense instruction was mandated by § 3242—even if there was no jurisdiction to convict on the lesser-included offense.

was a construction of Rule 31(c)." 812 F.2d 1283, 1285 (10th Cir. 1987).
Likewise, in *Joe* v. *United States,* we stated that the Court's emphasis on
"procedural values was an integral part of the basis for the holding in *Keeble.*"
510 F.2d at 1041; *see id.* at 1040 (summarizing *Keeble* as concluding district
courts have "jurisdiction to *instruct*" (emphasis added)).

Here, the district court's authority to instruct the jury on simple assault
was consistent with Mr. Hopson's statutory trial rights under § 3242 and
*Keeble*. But nothing in *Keeble* supports the government's argument that a
district court, having given the lesser-included offense instruction, also had
subject matter jurisdiction to convict on the lesser-included offense when it is
not a federal crime.

### b

The government also relies on *Spaziano* v. *Florida*, 468 U.S. 447 (1984)
to support affirmance. According to the government, *Spaziano* "rejected the
notion that a defendant can receive jury instructions for a lesser-included
offense for which he could not be convicted as a matter of law." Ans. Br. at 17.
We cannot agree.

The defendant in *Spaziano* was charged with capital murder in state
court. 468 U.S. at 449. At trial, he requested an instruction on certain lesser-
included offenses that did not carry the possibility of the death penalty. *Id.* at

450. But the statute of limitations had run on those non-capital offenses. Under the circumstances, the trial court said it would give the requested instruction only if the defendant agreed to waive the statute of limitations defense as to the lesser-included offenses. *Id.* Mr. Spaziano refused, and the trial court did not give the instruction. *Id.* The jury convicted Mr. Spaziano of capital first-degree murder. *Id.* at 451. He was sentenced to death. *Id.* at 452.

Mr. Spaziano appealed to the Supreme Court of Florida. *Id.* He contended it was reversible error not to instruct the jury on the lesser-included offenses. *Id.* In support, he relied on *Beck* v. *Alabama*, *id.*, which held "if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, [states are] constitutionally prohibited from withdrawing that option from the jury in a capital case," 447 U.S. 625, 638 (1980).[13] The Supreme Court of Florida affirmed Mr. Spaziano's conviction. *Spaziano*, 468 U.S. at 452. That court found "*Beck* inapposite" and concluded

_____

[13] Notably, *Beck* emphasized the importance of lesser-included offense instructions generally, and in doing so, relied extensively on *Keeble. See* 447 U.S. at 635 ("In the federal courts, it has long been 'beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.'" (quoting *Keeble*, 412 U.S. at 208)). The Court's holding in *Beck,* however, was limited to constitutional requirements in capital cases. *Id.* at 638 n.14 ("We need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case.").

"nothing in *Beck* requir[ed] that the jury [be instructed on] . . . lesser included offenses for which the defendant could not be convicted and adjudicated guilty." *Id.* at 452–53.

Mr. Spaziano then appealed to the Supreme Court. He "urge[d] that he should not be required to waive a substantive right—to a statute of limitations defense—in order to receive a constitutionally fair trial." *Id.* at 455. In Mr. Spaziano's view, "he [wa]s entitled to the benefit of the *Beck* rule regardless of whether the statute of limitations prevent[ed] him from actually being punished on a lesser included offense." *Id.* The Court acknowledged, as a general matter, "in a capital trial, a lesser included offense instruction is a necessary element of a constitutionally fair trial" (i.e., "the *Beck* rule"). *Id.* But, under the circumstances of Mr. Spaziano's case, he was not "entitled to the benefit of both the lesser included offense instruction and an expired period of limitations on those offenses." *Id.* at 454.

A "constitutionally fair trial" under *Beck*, the Court reasoned, "does not require that the jury be tricked into believing that it has a choice of crimes for which to find the defendant guilty, if in reality there is no choice." *Id.* at 455–56; *see id.* at 456 (stating "[s]uch a rule" "would undermine the public's confidence in the criminal justice system" and "do a serious disservice to the goal of rationality on which the *Beck* rule is based"). Accordingly, the Court

44

held "it was not error for the trial judge to refuse to instruct the jury on the lesser included offenses." *Id.* at 457.

Spaziano* does not disturb our conclusion about what *Keeble* holds. Nor does it otherwise suggest the district court had subject matter jurisdiction over Mr. Hopson's offense of conviction. To be sure, *Spaziano* further explains why lesser-included offense instructions are important to a fair trial. But ultimately, *Spaziano* is about what the Constitution requires in capital cases; it does not speak to the procedural guarantees Congress mandated under the Act. *Cf. Holt* v. *Hobbs*, 574 U.S. 352, 357 (2015) (showing, in a First Amendment context, Congress may "enact [a statute] in order to provide greater protection . . . than is available under the First Amendment").

Spaziano* identified certain policy considerations underpinning its constitutional analysis—ensuring the public's confidence in the criminal justice system and advancing the goal of rationality in jury trials. The government suggests those same concerns exist here and counsel for affirmance. The Court "has explained that to give a lesser-included instruction, the district court must—as a matter of law—have authority to convict the defendant of the lesser-included offense," the government maintains. "This is because the jury may not be tricked into (wrongly) believing the defendant can be convicted of the lesser-included offense." Ans. Br. at 17 (citing *Spaziano*, 468

U.S. at 454). The policy concerns that may have informed the Court's decision in *Spaziano* cannot be applied here to displace the text of the Act. *See Lackey* v. *Stinnie*, 145 S.Ct. 659, 669 (2025) ("It is Congress's job to craft policy and ours to interpret the words that codify it.").

Finally, the concerns identified in *Spaziano* are diminished in federal prosecutions arising under the Act. Unlike in *Spaziano,* there is a second sovereign—the Tribe—that may prosecute and convict the defendant for the lesser-included offense after any federal court acquittal. *See Denezpi* v. *United States*, 596 U.S. 591, 597–600 (2022) (holding two offenses can be separately prosecuted by both a tribal court and the United States without offending the Double Jeopardy Clause). Misdemeanor simple assault—though it is not a federal crime under the circumstances of this case—cannot fairly be described as an offense "for which the defendant may not be convicted." *Spaziano*, 468 U.S. at 455.[14]

---

[14] In a single sentence in its answer brief, the government asserts "the *Spaziano* Court acknowledged" that "the necessary result of *Keeble*'s holding . . . is that the district court has jurisdiction to convict the defendant of the lesser-included offense." Ans. Br. at 19. In support, the government quotes the following footnote in *Spaziano*:

We note that although the Court has not specifically addressed the question presented here, it has assumed that if a defendant is constitutionally entitled to a lesser included offense instruction, the trial court has authority to convict him of the lesser included offense. See *Keeble* v. *United States*, 412 U.S. 205 . . . (1973); *id.*, at

**3**

Finally, the government urges affirmance based on the weight of persuasive authority. "[E]very Circuit that has addressed this issue," the government says, "has agreed that where an Indian defendant has been charged with a crime enumerated in § 1153, the district court has jurisdiction

---

215–217 . . . (Stewart, J., dissenting on the ground that the Court's decision improperly conferred jurisdiction in the federal district court over crimes not enumerated in the Major Crimes Act, 18 U.S.C. §§ 1153, 3242).

*Spaziano*, 468 U.S. at 454 n.5.

The footnote in *Spaziano* is not particularly instructive. For one, the footnote appears to suggest *Keeble* involved a "constitutional[]" issue, *id.*, but *Keeble* stated "we need not face" any "difficult constitutional questions . . . [i]n view of our interpretation of the Act," 412 U.S. at 213. And *Keeble* made clear its holding said nothing about subject matter jurisdiction. *See* 412 U.S. at 214 ("We *hold only* that where an Indian is prosecuted in federal court under the provisions of the Act, the Act does not require that he be deprived of the protection afforded by an instruction on a lesser included offense." (emphasis added)); *see also United States* v. *John*, 437 U.S. 634, 636 n.3 (1978) (appearing to acknowledge *Keeble* addressed only "instructions regarding [a] lesser included offense," and not whether, in a prosecution under the Act, "the District Court had . . . jurisdiction to enter a judgment of conviction for the lesser offense").

In any event, the government has not developed any argument based on this footnote beyond pointing to it, and "[w]e will not make arguments for [a party] that it did not make in its briefs." *O'Neal* v. *Ferguson Constr. Co.*, 237 F.3d 1248, 1257 n.1 (10th Cir. 2001); *see also United States* v. *Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." (internal quotation marks omitted)).

47

to convict the defendant of the lesser-included offense." Ans. Br. at 22. The government contends we "should decline [Mr.] Hopson's invitation to hold otherwise." Ans. Br. at 22.

In the cases cited by the government, as here, the government indicted an Indian defendant for an offense listed in the Act, the district court instructed the jury on an unenumerated lesser-included offense of the major crime, and the district court convicted the defendant of the lesser crime. In these circumstances, our sister circuits held the district court must have had jurisdiction to convict on the lesser-included offense—essentially rejecting the argument Mr. Hopson makes and supporting the government's position in this appeal. We first describe the opinions in some detail and then explain why we cannot join them.

**a**

***Felicia* v. *United States*, 495 F.2d 353 (8th Cir. 1974)**. In *Felicia*, the government indicted an Indian defendant for assault with intent to inflict great bodily injury upon another Indian—an offense within the scope of § 1153. *Id.* at 353–54. "[T]he defendant requested an instruction on the lesser included offenses of assault or assault and battery," "[t]he instruction was given[,] and the jury found [the defendant] guilty of 'simple assault or assault and battery.'" *Id.* at 354. The district court convicted and sentenced the defendant on the

lesser-included offense. *Id.* On appeal, the defendant argued "although the trial court was obligated to give the lesser included offense instruction, the federal courts have no jurisdiction over the offense of simple assault or assault and battery." *Id.*

The Eighth Circuit affirmed. It first explained *Keeble* "requir[ed] that in [Major Crimes Act] trials . . . an instruction for the lesser included offense must be given when the evidence warrants." *Id.* The court of appeals acknowledged *Keeble* "did not explicitly hold that jurisdiction for a . . . lesser included offense existed in the federal court." *Id.* at 354–55. Nonetheless, the court held "jurisdiction over a lesser included offense is implicit in the statutes." *Id.* at 355.

The Eighth Circuit reasoned, "the clear language of 18 U.S.C. § 1153 itself provides that any Indian committing any of the enumerated offenses shall be subject to the same laws and penalties as all other persons committing any of the offenses within [federal] jurisdiction." *Id.* And "[c]onvictions for lesser included offenses are cognizable at federal law." *Id.* Likewise, the court observed § 1153 instructed district courts to "define[] and punish[]" assault causing serious bodily injury "in accordance with the laws of the State in which such offense was committed." *Id.* at 355 (citing Act of Apr. 11, 1968, Pub. L. No. 90-284, sec. 501, § 1153, 82 Stat. 73, 80); *see also* Act of Nov. 2, 1966, Pub.

L. No. 89-707, § 1153, 80 Stat. 1100, 1100–01; 18 U.S.C. § 1153(b).[15] And in South Dakota—the state where the offense conduct occurred—"a conviction for the lesser included offense of assault, or assault and battery is permissible when a defendant is charged with assault with intent to inflict great bodily injury." *Felicia*, 495 F.2d at 355.

"[M]ost importantly," the Eighth Circuit continued, *Keeble* "could not have intended" a lesser-included offense instruction "to be an exercise in futility, leaving the federal courts without the power to sentence after a conviction of the lesser included offense is returned." *Id.* The court stated "[t]his was recognized specifically in the dissent of Justice Stewart." *Id.* (citing *Keeble*, 412 U.S. at 216). "*Keeble* implicitly recognized," the court of appeals ruled, "that federal courts have jurisdiction to convict and punish for a lesser offense included within the enumerated crimes of the Major Crimes Act." *Id.*

---

[15] Congress has amended § 1153 since the Eighth Circuit decided *Felicia*, but the statute still directs courts to define certain offenses according to state law. *See* Act of May 15, 1986, Pub. L. No. 99-303, sec. 2, § 1153(b), 100 Stat. 438. The statute now reads,

> Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

18 U.S.C. § 1153(b).

*United States* v. *John*, **587 F.2d 683 (5th Cir. 1979)**. In *John*, the government indicted an Indian defendant for assault with intent to kill a non-Indian—an offense the parties and court treated as within the scope of § 1153.[16] *Id.* at 684–86. "At the conclusion of the trial, [the defendant] requested and received instructions on the lesser included offense of simple assault . . . . The jury convicted him of simple assault, and the Court sentenced him." *Id.* at 685 (citation omitted). The Fifth Circuit initially reversed the district court on an unrelated issue, but the Supreme Court reversed that ruling and remanded. *Id.*; *see John*, 437 U.S. at 654. On remand, the Fifth Circuit considered "whether the District Court had jurisdiction to enter a judgment of conviction for the offense of simple assault, a misdemeanor which is not specifically listed in 18 U.S.C. [§] 1153." *John*, 587 F.2d at 685.

The Fifth Circuit answered yes. *Id.* Not relevant here, the Fifth Circuit concluded the district court possessed jurisdiction independent of § 1153, because the victim was not an Indian. *Id.* at 686–88 (citing 18 U.S.C. § 1152). The court also added the following "alternative[]" holding: "[W]e adopt the

---

[16] Because the victim in *John* was not an Indian, the Fifth Circuit also held the district court had jurisdiction to convict the defendant under 18 U.S.C. § 1152, independent of § 1153. *United States* v. *John*, 587 F.2d 683, 686–88 (5th Cir. 1979). Given that conclusion, it is not clear why the Fifth Circuit also considered § 1153. As we will explain, *John* discussed lesser-included offenses under § 1153 only in the "alternative[]." *Id.*

reasoning of [*Felicia*] and hold that the Supreme Court in *Keeble* implicitly recognized that federal courts have jurisdiction to convict and punish for a lesser offense included within the enumerated crimes of [§] 1153. Mr. Justice Stewart's dissent specifically stated as much." *Id.* at 688.

**United States v. Bowman, 679 F.2d 798 (9th Cir. 1982)**. In *Bowman*, the government charged an Indian defendant with assault causing serious bodily injury to another Indian—an offense then listed in § 1153. *Id.* at 799. "He requested and was granted a jury instruction on the lesser included offense of assault by striking, beating, or wounding. The jury convicted him of the lesser included offense, judgment was entered and he was sentenced for that offense." *Id.* On appeal, the defendant argued "the district court lacked jurisdiction to sentence him on any crime not enumerated in [§] 1153." *Id.*

The Ninth Circuit affirmed. It "conclude[d] that the Supreme Court implicitly resolved the jurisdictional question against appellant's position when it decided *Keeble*." *Id.* The court of appeals acknowledged "the *Keeble* majority did not expressly state that the court would . . . have jurisdiction to enter judgment and sentence" after giving an instruction on a lesser-included offense. *Id.* But the court "f[ou]nd nothing in the opinion that would permit us to reach any other conclusion." *Id.*

The Ninth Circuit was troubled by the potential "result that a defendant convicted by the jury on a lesser included offense must be released by the court for lack of jurisdiction." *Id.* It reasoned, in such a case, the "jury would have been misled by the instruction. In the absence of some indication by the Supreme Court that it considers that result appropriate, we decline to reach it." *Id.* Likewise, the Ninth Circuit observed the *Keeble* Court "could not have been oblivious to the arguments against jurisdiction over lesser offenses," but it did not adopt them. *Id.* The Ninth Circuit further stressed "the dissenters in *Keeble* expressly interpreted the majority opinion as holding that the federal courts had jurisdiction to sentence on the lesser offense once the defendant had requested the instruction." *Id.* (citing *Keeble*, 412 U.S. at 217).

The Ninth Circuit then addressed the counterargument that its holding "might induce the government to 'overcharge' under [§] 1153 to ensure punishment for a lesser offense not enumerated in that section." *Id.* at 800. The court clarified that it was not deciding whether the government could request a lesser-included-offense instruction under *Keeble*. *Id.* The court concluded:

> [I]t is difficult to reconcile [our conclusion] with the history of [§] 1153 and the congressional intent to confer only limited jurisdiction on the federal courts over the enumerated offenses. Were we writing on a cleaner slate, we might reach a different result than we do today. We are unable to do so and remain consistent with *Keeble*.

53

*Id.* (citation omitted).

Judge Henderson dissented.[17] He reasoned, "In the absence of an explicit Congressional, not judicial, directive, Indian tribes have exclusive criminal jurisdiction over offenses committed by one Indian against another Indian within Indian country." *Id.* at 801 (Henderson, J., dissenting) (citing *Wheeler*, 435 U.S. at 325). So "[a]s to such crimes that are not enumerated in the Major Crimes Act, the tribal courts retain exclusive jurisdiction." *Id.* (citing 18 U.S.C. § 1152). Because "[t]he crime for which [the defendant] was convicted and sentenced is not an enumerated offense under 18 U.S.C. [§] 1153," Judge Henderson concluded, "[t]he tribal courts thus retain exclusive jurisdiction over that crime." *Id.*

The dissent further concluded "*Keeble* does not . . . compel a different conclusion." *Id.* Judge Henderson emphasized "*Keeble* is a case about procedural rights to which Indian defendants are entitled in federal court." *Id.* "If Congress is to be understood as having deprived tribal courts of their exclusive jurisdiction over lesser-included offenses," Judge Henderson continued, "that understanding should be clear either from the Congressional

---

[17] Judge Henderson, a district court judge, was sitting by designation. *United States* v. *Bowman*, 679 F.2d 798, 800 (9th Cir. 1982) (Henderson, J., dissenting).

act or from an express interpretation of such an act by the Supreme Court." *Id.* at 802. In Judge Henderson's view, Indian defendants will not "escape punishment" if federal courts lack jurisdiction over unenumerated offenses, given tribal courts' criminal jurisdiction. *Id.* The majority's holding in *Bowman*, Judge Henderson observed, could result in overcharging by federal prosecutors. *See id.*

*United States* v. *Walkingeagle*, 974 F.2d 551 (4th Cir. 1992). In *Walkingeagle*, the government indicted an Indian defendant for assault with a dangerous weapon and assault causing serious bodily injury upon another Indian—offenses then listed in § 1153. *Id.* at 552; *see id.* at 555 (Hamilton, J., dissenting). At the close of the government's case, the defendant successfully moved for acquittal on both counts under Federal Rule of Criminal Procedure 29(a). *Id.* at 552–53 (majority opinion). But "over [the defendant's] objection, the court instructed the jury on the lesser-included offense of assault by striking, beating, or wounding. . . . The jury returned a verdict of guilty [on that lesser-included offense], and the court sentenced [the defendant]." *Id.* at 553.

On appeal, the Fourth Circuit considered "whether the district court retained jurisdiction over the lesser-included offense after it granted judgment of acquittal on the statutory felony counts." *Id.* Notably, the defendant

"concede[d] that the district court has jurisdiction over the lesser-included offense if the greater offense is also submitted to the jury"—which is the disputed question in Mr. Hopson's case. *Id.* The defendant instead "argue[d] that the court has no jurisdiction over the lesser offense if it enters a judgment of acquittal on the charged felony counts." *Id.*

The Fourth Circuit affirmed. The court of appeals held "*Keeble* settled the threshold question of whether the federal courts can *ever* have jurisdiction over non-enumerated offenses in prosecutions under the Act." *Id.* (citing generally *Felicia*, 495 F.2d 353; *John*, 587 F.2d 683; *Bowman*, 679 F.2d 798). It further stated *Keeble* "turns on the language of § 3242's procedural provision that trials under the Act shall be conducted in the same way as other federal criminal trials." *Id.* According to the Fourth Circuit, § 3242 means "a federal court has jurisdiction over a non-enumerated offense if, *as a matter of federal trial procedure*, the court is permitted to instruct the jury on the lesser-included, non-enumerated offense." *Id.* "*Keeble* shows that there is no loss of jurisdiction over the lesser-included offense," the court of appeals reasoned, "where the jury finds the evidence of the 'major crime' insufficient, likewise there is no loss of jurisdiction when the judge performs the same function." *Id.* at 554.

Judge Hamilton dissented. He first asserted "[f]ederal courts must exercise restraint to ensure that they do not exceed the jurisdiction properly allotted to them." *Id.* (Hamilton, J., dissenting). He continued, "[t]he sole, express, congressional exceptions to the jurisdiction of the [Indian Tribes] over Indian on Indian crime are set forth at 18 U.S.C. § 1153." *Id.* at 555. Based on the text of the Act, Judge Hamilton emphasized "the assault [of conviction] is simply not included in the Major Crimes Act list of offenses for which federal court jurisdiction exists." *Id.* He also expressed concern the majority's ruling would lead to overcharging "for the purpose of obtaining jurisdiction over" lesser-included offenses. *Id.*

"*Keeble* neither compels nor counsels the result reached [by the majority]," Judge Hamilton concluded. *Id.* at 556. In his view, the Supreme Court "took great pains to specifically characterize the giving of the lesser included offense instruction as a 'procedural right.'" *Id.* Judge Hamilton explained the Court "specifically noted 'that our decision today neither expands the reach of the Major Crimes Act nor permits the Government to infringe the residual jurisdiction of a tribe by bringing prosecutions in federal court that are not authorized by statute.'" *Id.* (quoting *Keeble*, 412 U.S. at 212, 214).[18]

---

[18] In addition, the dissent distinguished the facts in *Keeble* from the facts in *Walkingeagle*. 974 F.2d at 556 (Hamilton, J., dissenting). Recall, in *Walkingeagle*, "the district court granted [the defendant's] motion for judgment

Judge Hamilton acknowledged his view diverged from the circuit courts that had considered the issue, but he maintained the "line of cases creating criminal jurisdiction by implication should be rejected." *Id.* at 559. Finally, Judge Hamilton stated reversal was "sensible" because that result "prevents 'the government from infring[ing] the residual jurisdiction of a tribe' . . . where Congress has not specifically authorized such prosecutions by statute." *Id.* (quoting *Keeble*, 412 U.S. at 214 (alteration in original)).[19]

<h3 style="text-align:center">b</h3>

Throughout its appellate briefing, the government reprises much of the reasoning in these out-of-circuit opinions. We respectfully conclude we are not persuaded by these opinions. Our sister circuits—like the government—

---

of acquittal on the charged crimes, before the case was submitted to the jury," meaning there were no "viable charges under the Act" when the jury was instructed on the lesser-included offense. *Id.* at 557.

[19] The government also points to *Muscogee (Creek) Nation* v. *Hodel*, 851 F.2d 1439 (D.C. Cir. 1988). Ans. Br. at 22. Mr. Hopson rightly observes *Hodel* "does not meaningfully address the issues presented in this appeal." Reply Br. at 14. In the cited portion of *Hodel*, the D.C. Circuit stated the rule that "the federal courts [lack] jurisdiction over minor Indian on Indian crime within Indian Country." *Hodel*, 851 F.2d at 1446. The court then merely noted "there is one narrow exception": "Where an Indian defendant has been charged with one of the crimes enumerated in the Major Crimes Act, 18 U.S.C. § 1153, he is entitled to an instruction on lesser included offenses. If convicted of a lesser included offense, the conviction is a valid one." *Id.* at 1446 n.10 (citing generally *Keeble*, 412 U.S. 205, and *John*, 587 F.2d 683). Because *Hodel* involves no relevant analysis or holding, we need not address its reasoning.

misread *Keeble*. Contrary to their understanding, *Keeble* concerned only "procedural rights" under the Act and not whether subject matter jurisdiction existed over unenumerated lesser-included offenses. *Keeble*, 412 U.S. at 212. And the reasoning in these opinions is not sufficiently grounded in the text of the Act. To be sure, this court is reluctant to create "unnecessary circuit splits." *United States* v. *Thomas*, 939 F.3d 1121, 1131 (10th Cir. 2019) (quoting *United States* v. *Games-Perez*, 695 F.3d 1104, 1115 (10th Cir. 2012) (Murphy, J., concurring)). But, as we explain, there is "good reason" to diverge from the apparent consensus. *Id.*

**i**

*First*, we reject the theory—which these opinions seem to accept—that *Keeble* "implicitly" held district courts have subject matter jurisdiction over lesser-included offenses not listed in § 1153. The Eighth Circuit so characterized *Keeble*'s holding. *See Felicia*, 495 F.2d at 355 ("[T]he Supreme Court in *Keeble* implicitly recognized that federal courts have jurisdiction" over unenumerated lesser-included offenses.). The Fifth and Ninth Circuits followed suit. *See John*, 587 F.2d at 688 (expressly adopting the reasoning in *Felicia* and concluding, "the Supreme Court in *Keeble* implicitly recognized" jurisdiction over unenumerated lesser-included offenses.); *Bowman*, 679 F.2d at 799 ("[T]he Supreme Court [in *Keeble*] implicitly resolved the jurisdictional

59

question."). The Fourth Circuit appeared to reason similarly. *Walkingeagle*, 974 F.2d at 553 (acknowledging "[j]urisdiction over non-enumerated crimes *was not expressly* conferred on the federal courts" but "*Keeble* settled the threshold question of whether the federal courts can *ever* have jurisdiction over non-enumerated offenses in prosecutions under the Act" (first emphasis added)).

Judge Henderson's well-stated dissent in *Bowman* explains why it is wrong to conclude *Keeble* resolved the jurisdictional question by implication: "[I]f Congress is to be understood as having deprived tribal courts of their exclusive jurisdiction over lesser-included offenses, that understanding should be clear either from the Congressional act or from an *express interpretation* of such an act *by the Supreme Court*." 679 F.2d at 802 (emphasis added). *Keeble* did not interpret the Act as granting federal courts jurisdiction over unenumerated crimes, as our sister circuits acknowledge. And nothing in *Keeble* suggests it interpreted the Act as a clear expression of congressional intent to confer jurisdiction over unenumerated lesser-included offenses. Recall, *Keeble* cabined its holding *expressly*.[20] 412 U.S. at 214 ("[W]e emphasize

---

[20] Notwithstanding these express statements, the Eighth, Fifth, and Ninth Circuit opinions lean heavily on Justice Stewart's dissent to best understand the *Keeble* majority opinion. In the view of our sister circuits, the dissent in *Keeble* seemed to think the majority resolved the jurisdictional question in favor of jurisdiction as a matter of implication. *See Felicia* v. *United*

that our decision today neither expands the reach of the Major Crimes Act nor permits the Government to infringe the residual jurisdiction of a tribe by bringing prosecutions in federal court that are not authorized by statute."); *id.* ("We hold *only* that where an Indian is prosecuted in federal court under the provisions of the Act, the Act does not require that he be deprived of the protection afforded *by an instruction* on a lesser included offense." (emphasis added)). The majority in *Keeble* "took great pains to specifically characterize the giving of the lesser included offense instruction as a 'procedural right'"— not a matter of jurisdiction. *Walkingeagle*, 974 F.2d at 556 (Hamilton, J., dissenting) (quoting *Keeble*, 412 U.S. at 212); *see Bowman*, 679 F.2d at 801 (Henderson, J., dissenting).

*Second*, we reject the notion that there is anything futile about the procedural right to a lesser-included offense instruction recognized in *Keeble*. The Eighth Circuit wrote "leaving the federal courts without the power to sentence after a conviction of the lesser included offense is returned" would be "an exercise in futility"—something the Supreme Court in *Keeble* "could not

---

States, 495 F.2d 353, 355 (8th Cir. 1974); *John*, 587 F.2d at 688; *Bowman*, 679 F.2d at 799. We are not sure this is a correct reading of the dissent. Nor are we persuaded to discern what *Keeble* held by reference to what the dissent observed, particularly when the majority opinion could not have been clearer about what it was and was not holding.

have intended." *Felicia*, 495 F.2d at 355. This reasoning minimizes the import of lesser-included offense instructions in prosecutions under the Act and misunderstands the principle of procedural equality mandated by § 3242, which *Keeble* carefully discussed.

*Keeble* held courts must grant Indian defendants prosecuted under the Act the same "procedural rights guaranteed to other defendants." 412 U.S. at 212. The Supreme Court explained, a lesser-included-offense instruction safeguards against making it "easier to convict an Indian" for a major crime. *Id.* As Mr. Hopson points out, the instruction "appropriately remove[s] the temptation of the jury to wrongly convict on a more serious charge . . . because that is the only option." Op. Br. at 33–34; *see Walkingeagle*, 974 F.2d at 556 (Hamilton, J., dissenting) (explaining *Keeble* "noted that the failure to give the lesser included offense instruction could have skewed the decisionmaking of the jury with respect to the charged crime"). This procedural protection is a "benefit[]," not an exercise in futility. *Keeble*, 412 U.S. at 212.[21]

---

[21] The Ninth Circuit suggested the Supreme Court already approved the reasoning in *Felicia* by citing that case in a footnote in *John. Bowman*, 679 F.2d at 800 (citing *John*, 437 U.S. at 636 n.3). The footnote said,

> [The defendant] argued before the Court of Appeals that although he was entitled to [lesser-included-offense] instructions, the District Court had no jurisdiction to enter a judgment of conviction for the lesser offense, a misdemeanor not listed in § 1153. The Court of Appeals . . . did not reach the issue. It has not been argued

## ii

Likely because our sister circuits read *Keeble* to implicitly decide the jurisdictional question, their opinions do not sufficiently grapple with the statutory text. The Fifth, Ninth, and Fourth circuits did not meaningfully address the text of the Act.[22] *See John*, 587 F.2d at 688; *Bowman*, 679 F.2d at 799–800; *Walkingeagle*, 974 F.2d at 553. The Eighth Circuit marshaled the text, but its reasoning is unpersuasive. According to the Eighth Circuit, "the clear language of 18 U.S.C. § 1153 itself provides that any Indian committing any of the enumerated offenses shall be subject to the *same laws and penalties*" as other defendants. *Felicia*, 495 F.2d at 355 (emphasis added). "Convictions

---

before this Court. *See*, however, *Felicia* v. *United States*, 495 F.2d 353 (CA8), cert. denied, 419 U.S. 849, 95 S.Ct. 88, 42 L.Ed.2d 79 (1974).

*John*, 437 U.S. at 636 n.3. We do not read the Supreme Court's citation to *Felicia* to indicate endorsement of a district court's subject matter jurisdiction over unenumerated offenses in the Act. The Court acknowledged the existence of a jurisdictional question, observed the issue was not before it, and then pointed the reader to a circuit court opinion on point. We fail to see how this recitation is anything but purely descriptive.

[22] In addition to concluding its holding was compelled by *Keeble*, the Fourth Circuit focused on "the reality that a lesser-included offense is an offense that is necessarily committed upon the commission of another offense." *United States* v. *Walkingeagle*, 974 F.2d 551, 554 (4th Cir. 1992). To the extent the Fourth Circuit suggested a lesser-included offense necessarily travels with a listed offense, like the government argues here, we have explained why that reasoning does not comport with the text and purpose of the Act. *See supra* Section (II)(C)(1)(a).

63

for lesser included offenses are cognizable at federal law" for other defendants, the Eighth Circuit reasoned, so they must also be cognizable for Indian defendants. *Id.*

The term "same law and penalties" cannot properly be read to incorporate unlisted offenses or other bodies of federal law *sub silentio*. 18 U.S.C. § 1153(a); *see Quiver*, 241 U.S. at 606 (explaining the Act's "enumeration . . . of certain offenses as applicable to Indians in the reservations, carries with it some implication of a purpose to exclude others"); *Turkiye Halk Bankasi A.S.*, 598 U.S. at 274 ("Congress typically does not 'hide elephants in mouseholes.'" (quoting *Whitman* v. *Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001))). The Eighth Circuit's reading of "same law" also does not "strictly construe[]" the language of "[s]tatutes conferring jurisdiction." *United States* v. *Pethick*, 513 F.3d 1200, 1202 (10th Cir. 2008); *see Am. Fire & Cas. Co.* v. *Finn*, 341 U.S. 6, 17 (1951) (explaining "[t]he jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation"); *see also Todd* v. *United States*, 158 U.S. 278, 282 (1895) ("There can be no constructive offenses, and, before a man can be punished, his case must be plainly and unmistakably within the statute." (quoting *United States* v. *Lacher*, 134 U.S. 624, 628 (1890))).

64

It bears repeating: "[T]o uphold the jurisdiction exercised in" federal prosecutions of Indian-against-Indian conduct in Indian country, the Supreme Court "requires a clear expression of the intention of congress." *Ex parte Crow Dog*, 109 U.S. at 572; *see also id.* (holding no federal jurisdiction existed over an offense when "we have not been able to find" such a "clear expression"); *United States* v. *Bryant*, 579 U.S. 140, 147 (2016) (favorably citing *Crow Dog*); *McGirt*, 591 U.S. at 929 (same); *Quiver*, 241 U.S. at 606 (holding federal courts lack jurisdiction over an offense not listed in § 1153, reasoning "there should be some clear provision to that effect"). We fail to see how the Eighth Circuit's interpretation of the statutory text heeds this well-settled directive.

### III

We **VACATE** the district court's entry of judgment of conviction against Mr. Hopson for misdemeanor simple assault under 18 U.S.C. § 113(a)(5) and **REMAND** for further proceedings consistent with this opinion.